### Lawrence Hammers, Appellant, v. Charles Knight, et al., Appellees.

### Gen. No. 5603.

1. DRAM-SHOPS—*what proof sufficient in action to recover for loss of means of support.* In an action of tort the allegations of the declaration are divisible in their nature and if enough of the facts alleged in the declaration are proved to constitute a cause of action, there can be a recovery.

2. DRAM-SHOPS—*what proof sufficient to recover for loss of means of support.* Proof by a plaintiff that the defendants sold or gave the plaintiff's father intoxicating liquors which caused the intoxication and that in consequence of such intoxication he killed himself and thus injured the plaintiff in his means of support establishes a cause of action authorizing a recovery. So, too, if the plaintiff proves that the defendants sold or gave to the plaintiff's father intoxicating liquors by the use of which he became intoxicated and crazed and violent and possessed of a suicidal mania and because of that mental condition he killed himself and injured the plaintiff in his means of support, this also would establish a cause of action.

3. DRAM-SHOPS—*what does not preclude recovery in action for*

*loss of means of support.* In order to recover under the dram-shop act the intoxication caused by the defendants need not be shown to be the sole cause of the injury resulting.

4. DRAM-SHOPS—*effect of failure of proof as to part of the defendants in action for loss of means of support.* In actions of tort a plaintiff is not required to prove that each defendant is guilty but may prove that a part of them are guilty and may have a verdict against so many of the defendants as the proof warrants.

5. EVIDENCE—*what not competent as dying declaration.* A note written by a party prior to committing suicide if not part of the *res gestae* is not competent as a dying declaration.

Tort. Appeal from the Circuit Court of Henry county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the October term, 1911. Reversed and remanded. Opinion filed March 13, 1912.

N. F. ANDERSON and JAMES H. ANDREWS, for appellant.

STURTZ & EWAN, for appellees.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Appellant, a minor, by his next friend, brought this action against certain saloon keepers and the owners of certain buildings in which saloons were kept, for the injury to his means of support by the intoxication and consequent suicide of his father Edward Hammers, which the declaration charged was caused by liquors sold and given to said Hammers by the defendants who kept saloons. A demurrer was sustained to the original declaration, an amended declaration of two counts was filed and afterwards an additional count, and upon these issues were joined. At the first trial the jury disagreed, and at a second trial, (the suit having been at different times dismissed as to the owners of the buildings), the defendants who were saloon keepers had a verdict. A motion for a new trial was overruled and they had judgment and plaintiff below appeals.

The first count of the amended declaration, after

various other allegations, charged that the appellees sold and gave intoxicating liquors to Hammers in divers quantities and at various times, which he drank and thereby became intoxicated, and that Hammers, being so intoxicated, in consequence of said intoxication became crazed and violent and possessed of a suicidal mania, and by reason of such intoxication and consequent mental condition shot and mortally wounded himself with a pistol loaded with powder and leaden ball and died in consequence of such shooting and wounding, which shooting, wounding and consequent death was caused by said intoxication, and that thereby appellee was injured in his means of support. The second count was like the first, with the additional averment that Hammers was an habitual drunkard, as defendants well knew, and yet they sold and gave him intoxicating liquors as aforesaid. The additional count was similar but charged that by reason of the drinking of said intoxicating liquors so sold and given him by appellees, Hammers was caused to continue in a state of intoxication and in consequence of such intoxication became crazed and violent and possessed of a suicidal mania, and by reason of such intoxication and said continuation thereof and said consequent mental condition, shot and killed himself which shooting, wounding and consequent death were caused by said intoxication.

By instructions given at the request of appellees, the jury were in effect told that to entitle appellant to a recovery all the allegations above set out must be proved by a preponderance of the evidence, and that it must be proved that appellees sold Hammers intoxicating liquors on the day of his death and that he thereby became intoxicated and continued to be intoxicated till he shot himself, and that he became crazed and violent and possessed of a suicidal mania, and that because of such intoxication then existing and because of said mental condition, he killed himself,

and that, if any of these conditions were absent, there could be no recovery. The court refused instructions requested by appellant, which indicated that not all of these conditions must be proved to authorize a recovery. In actions of tort the allegations of the declaration are divisible in their nature, and, if enough of the facts alleged in a count of the declaration are proved to constitute a cause of action, there can be a recovery. 1 Chitty's Pleading 305; City of Rock Island v. Cuinely, 126 Ill. 408; C. & G. T. Ry. Co. v. Spurney, 197 Ill. 471-477; Postal Tel. Cable Co. v. Likes, 225 Ill. 249. We are of opinion that proof by appellant that appellees sold or gave Hammers intoxicating liquors which caused his intoxication and that, in consequence of such intoxication, he killed himself and thus injured appellant, in his means of support, would establish a cause of action authorizing a recovery. So too, if appellant proved that appellees sold or gave Hammers intoxicating liquors, by the use of which he became intoxicated and crazed and violent and possessed of a suicidal mania, and because of that mental condition he killed himself and injured appellee in his means of support this also would establish a cause of action.

By instruction No. 15 given at the request of appellees, the jury were told that even though immediately before and at the time Hammers took his own life he was intoxicated from the use of liquor procured from appellees, still if in destroying his own life he was actuated by a feeling of jealousy towards his wife and if he would not have taken and did not take his life by reason of such intoxication alone, then the jury should find the defendant not guilty. By the 18th instruction, given at the request of appellees, the jury were told that if there was some other cause aside from the intoxication of Hammers, sufficient to be deemed the cause of his death and which was in fact the efficient proximate cause of his death, then plaintiff

could not recover. These instructions were based upon evidence tending to show that Hammers was jealous of his wife and had recently tried to kill her and left a note accusing her of unfaithfulness to him, the contention of appellees being that he killed himself because of jealousy and not because of intoxication. It does not follow, if Hammers was jealous of his wife and that jealousy was operating upon his mind at the time he killed himself, that such jealousy was therefore the sole or efficient cause of his suicidal act. It may well have been that his jealousy was produced or influenced by his intoxication. The instructions given for appellees tended to lead the jury to understand that the intoxication must have been the sole cause of the suicide and that if any other cause co-operated therewith to cause him to commit suicide, then there was no right of recovery. On this subject in Schroeder v. Crawford, 94 Ill. 357, the Supreme Court expressed the following views:

"If a person, because of being intoxicated, lies down upon, or falls on a railroad track and is unavoidably run over and killed by a passing train of cars, the result is in consequence of the intoxication. It is said there was an intervening agency which caused the death, to-wit: the train of cars; that that was the proximate cause, and the intoxication but the remote cause, and that the proximate cause is only to be looked to. So it might be said where one from intoxication lies down and becomes frozen to death, or falls into the fire and is burned to death, or is drowned by a freshet, as in Hackett v. Smelsley, 77 Ill. 109, that the intervening agency of frost, fire and the freshet occasioned the death and was the proximate cause, and thus no liability under this statute. This would be construing away the statute in defeat of its purpose. It was not the intention that the intoxicating liquor alone, of itself, exclusive of other agency, should do the whole injury. That would fall quite short of the

measure of remedy intended to be given. The statute was designed for a practical end, to give a substantial remedy, and should be allowed to have effect according to its natural and obvious meaning. Any fair reading of the enactment must be that in the instances above, as well as the present, the death would have been in consequence of the intoxication within the undoubted intendment of the statute."

This was approved in Triggs v. McIntyre, 215 Ill. 369. We therefore hold that under this statute it was not necessary for plaintiff to show that the intoxicating liquor alone, of itself, exclusive of every other agency, did the whole injury. These instructions therefore were calculated to mislead the jury. The effect of instruction No. 5 given at the request of appellees was to tell the jury that unless appellant proved by a preponderance of the evidence that all the appellees sold or gave Hammers intoxicating liquors on the day of his death, from which he became intoxicated, they should find each defendant not guilty. In actions of tort a plaintiff is not required to prove that each defendant is guilty, but may prove that a part of them are guilty, and may have a verdict against so many of the defendants as the proof warrants. Other instructions given stated the correct ruling upon this subject, but instruction No. 5 directed a verdict and it is the law that an erroneous instruction which directs a verdict cannot be aided by other instructions.

Appellees offered in evidence the following paper:

"good Buy
this is the last
report Ed Hammers
can give My wife is a
hore
sind by Ed Hammers."

Appellant objected on the ground that it was immaterial, was not shown to be a part of the *res gestae,* and was hearsay. The objection was overruled and

appellant excepted. There was proof tending to show that Hammers went to his home in an intoxicated condition on the evening of his death, after spending much time that afternoon in the saloons of appellees; that he quarreled with and drove his wife from the house and went to the house, shut and locked the door, pulled down the window shades, and about an hour thereafter the shot was heard which caused his death; that when the house was thereafter entered this piece of paper was found on a stand in the room where the dead body lay; and that it was in the handwriting of Hammers. There was other evidence that the paper was not in Hammers' handwriting and that the period which elapsed between the locking of the door and the shooting was much less than one hour. There was evidence that Hammers was jealous of his wife and before he went into the house that evening had accused her of being in the alley with some man. The only purpose for which this paper could be admissible would be for its supposed tendency to show the state of mind in which Hammers was when he wrote it at some period of time before he fired the fatal shot. There was no proof that it was written at the time of the shooting. If Hammers was wild or crazy because of intoxication, the charge in this paper may have been made by him because of his intoxicated condition. Hammers could not prepare and leave a paper which would be evidence of the truth of what he wrote, either against appellant or appellees. The natural tendency of this paper as evidence was to lead the jury to believe that he killed himself because he considered his wife unfaithful, whereas it might with equal propriety be concluded that he wrote the paper and harbored in his mind the charge therein contained because he was intoxicated and frenzied with drink. The impropriety of admitting the paper may be illustrated by supposing that it had said that he was intoxicated; that this intoxication had been produced by intoxicating liquors sold to him that

day by appellees; and that he was about to kill himself because of that intoxication. Such a paper would be just as illustrative of his state of mind as the one put in evidence, but it is obvious that it would not be competent evidence against appellees. We conclude that it should not have been admitted.

For these errors the judgment must be reversed and the cause remanded.

*Reversed and remanded.*