Helena St. Clair, Virginia St. Clair, Russell St. Clair, Frances St. Clair and Lawana St. Clair, Minors, By Helena St. Clair, Their Mother and Next Friend, Appellants, v. James G. Douvas, Frank Dallah and 3875 Cottage Grove Liquors, Inc., Appellees.

Gen. No. 47,599.

First District, First Division.

April 20, 1959.

Released for publication June 12, 1959.

445

Arthur S. Gomberg, of Chicago (Samuel Nineberg, of counsel) for appellants.

■

Heineke, Conklin & Schrader, of Chicago (Andrew H. Marsch, of counsel) for appellees.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This action arose under the Dramshop Act (Ill. Rev. Stat. 1957, chap. 43, par. 135) and was based upon the sale of intoxicating liquors by the defendants to one Samuel St. Clair, the husband of Helena St. Clair, who, as is alleged, while intoxicated provoked a quarrel with Eugene St. Clair, his minor son, and stabbed him to death. The complaint is in two counts. Count one is brought by Helena St. Clair, individually and as administratrix of the estate of Eugene St. Clair, deceased, and certain minor children, by Helena St. Clair, their mother and next friend, and is predicated upon the loss of means of support from Eugene St. Clair. Count two was brought by Helena St. Clair, Virginia St. Clair, Russell St. Clair, Frances St. Clair and Lawana St. Clair, minors, by Helena St. Clair, their mother and next friend, against certain defendants, and charges that Samuel St. Clair, the husband of Helena St. Clair and the father of Eugene St. Clair and four other children, became intoxicated from liquors furnished him by the defendants and as a direct and proximate cause of his intoxication he (Samuel) provoked a quarrel with Eugene and stabbed him to death; that Samuel was prosecuted for murder, convicted and incarcerated in prison for a long period of time; that he was later released on probation; that because of the conviction the plaintiffs were deprived of his earnings and future earning capacity; and that at the time he was sentenced to the penitentiary he was gainfully employed and contributed to the support of each of the plaintiffs.

Several of the defendants moved to dismiss count two on the grounds that the Dramshop Act author-

447

izes recovery only for death or injury to a provider; that the said loss of means of support did not result from death or injury occasioned to the alleged provider Samuel St. Clair; and that the loss of support was not the direct and proximate result of the sale or gift of alcoholic liquors to the said Samuel, but was the direct and proximate result of the independent intervening acts of the People of the State of Illinois. The court sustained the motion to dismiss count two, and from that order this appeal is taken.

No question was raised in the trial court, nor here, with reference to the joinder of parties plaintiff under count two.

The Dramshop Act was first adopted in 1874, and from that date until 1949 no substantial changes were made. In 1949 the Act was amended limiting the time in which suit could be brought as well as the amount of recovery, and eliminating the provision for exemplary damages. In 1955 it was again amended. Before the 1955 amendment the Act provided (chap. 43, par. 135):

"Every husband, wife, child, parent, guardian, employer or other person, who shall be injured, in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person . . . ."

After the 1955 amendment, which was effective July 1, 1956, the Act provided:

"Every person, who shall be injured, in person or property by any intoxicated person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxi-

448

cation, in whole or in part, of such person . . . . An action shall lie for injuries to means of support, caused by an intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, resulting as aforesaid. Such action shall be brought by and in the name of the person injured or the personal representative of the deceased person, as the case may be, from whom said support was furnished . . . . Recovery under this Act for injury to the person or to the property of any person as aforesaid, shall not exceed $15,000, and recovery under this Act for loss of means of support resulting from the death or injury of any person, as aforesaid, shall not exceed $15,000 for each person so injured where such injury occurred prior to the effective date of this amendatory Act of 1955, and not exceeding $20,000 for each person so injured after the effective date of this amendatory Act of 1955 . . . ."

In Howlett v. Doglio, 402 Ill. 311, speaking of the Act generally, the court says:

"It was not an actionable tort at common law either to sell or give intoxicating liquor to 'a strong and able-bodied man,' and such an act was not deemed to be culpable negligence imposing liability for damages upon the vendor or donor of the liquor. (Cruse v. Aden, 127 Ill. 231.) Although the Dram Shop Act is penal in character and should be strictly construed, (Cruse v. Aden, 127 Ill. 231; Meidel v. Anthis, 71 Ill. 241,) the legislation is, at the same time, remedial and should be so construed as to suppress the mischief and advance the remedy. (Economy Auto Ins. Co. v. Brown, 334 Ill. App. 579; Klopp v. Benevolent Protective Order of Elks, Lodge No. 281, 309 Ill. App. 145; Hyba v. C. A. Horneman, Inc., 302 Ill. App. 143.)"

Prior to the 1955 amendment it was recognized that a cause of action could arise in favor of the person claiming loss of support when that loss arose from a

criminal act committed while intoxicated by the person furnishing the support. In Danhof v. Osborne, 11 Ill.2d 77, the court says:

"Heretofore, liability in these loss-of-support cases has been limited principally to instances where the intoxicated person, because of the intoxication, commits some affirmative act resulting in harm to himself or others. (E.g., drives an automobile in a reckless manner, Bejnarowicz v. Bakos, 332 Ill. App. 151; commits suicide, Hammers v. Knight, 168 Ill. App. 203; commits a criminal act, Brown v. Moudy, 199 Ill. App. 85; squanders his funds, etc., Siegle v. Rush, 173 Ill. 559; provokes an assault, Casey v. Burns, 7 Ill.App.2d 316.)"

In the case of Spousta v. Berger, 231 Ill. App. 454, an action was brought by a wife for damages resulting from the sale of intoxicating liquor to her husband by the defendant and was predicated upon the conviction and imprisonment of the husband for a crime committed as the result of the intoxication, and the court sustained the wife's recovery.

 It is the contention of the defendants that the provision of the statute to the effect that the action must be brought in the name of the person injured, from whom the said support was derived, should be considered as meaning that there could be no recovery unless a physical injury had been incurred by the person providing the support and that the decisions of the Illinois courts interpreting the Act before the amendment are no longer applicable. To so hold would, in our opinion, require a strained construction of the statute. If the legislature had so intended it would have so stated. In the Act as amended the term "injured" or "injuries" is used several times, and the meaning must be interpreted considering the subject to which the word refers and with reference to the context. In Moran v. Katsinas, Trustee, et al.,

16 Ill.2d 169, opinion filed March 20, 1959, considering this Act, the Supreme Court says: "In construing a statute where the same, or substantially the same, words or phrases appear in different parts of the same statute they will be given a generally accepted and consistent meaning, where the legislative intent is not clearly expressed to the contrary. (People ex rel. Lipsky v. City of Chicago, 403 Ill. 134; Stiska v. City of Chicago, 405 Ill. 374.) . . ." The provision in the Dramshop Act that "an action shall lie for injuries to means of support, caused by an intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, resulting as aforesaid" is substantially the same as the provision was before the amendment. This sentence in the amendment creates the right of action for injuries to means of support. Huckaba v. Cox, 14 Ill.2d 126, 130. The word "injuries" there used does not mean physical injuries. It means that the person entitled to support received an injury through being deprived of means of support and that such injury was a violation of his legal rights. Jury v. Ogden, 56 Ill. App. 100, 105. The sentence following the quoted portion of the section states in whose name the action shall be brought (Huckaba v. Cox, supra; Steller v. Miles, 17 Ill.App.2d 435), and the word "injured" as used therein should be given its ordinary meaning. In Webster's New International Dictionary, 2nd Ed., "injury" is defined as "damage or hurt done to or suffered by a person or thing; detriment to, or violation of, person, character, feelings, rights, property, or interests . . . ." The incarceration of a person in a penitentiary could, under the general meaning of injury, properly be construed as being an injury to him. In the portion of the statute dealing with limitations on the amount of recovery where the word "injured" is used in connection with the person furnishing the

support, the word should also be given its ordinary meaning. In Huckaba v. Cox, supra, a case concerning this Act, the Supreme Court said:

"It is a cardinal rule of statutory construction that the intent and meaning of a statute are to be determined from the entire statute. A statute is passed as a whole and not in parts. Each section and provision should be construed in connection with every other part or section. (People v. Continental Illinois Nat. Bank and Trust Co., 360 Ill. 454.) In Scofield v. Board of Education, 411 Ill. 11, we said, at page 15: 'It is a generally accepted principle of statutory construction, and has been so held by this court many times, that in construing a statute or determining its constitutionality, all its sections are to be construed together in the light of the general purpose and plan, the evil intended to be remedied, and the object to be obtained, and if the language is susceptible of more than one construction, the statute should receive the construction that will effect its purpose rather than defeat it.' "

Reading the entire amendment we find that it was not the intention of the legislature to limit actions brought for injury to means of support to cases where death or a physical injury was suffered by the person furnishing the support, and we hold that the cases which were decided under the Act before the amendment construing the provision creating the right of action for injuries to means of support are still controlling.

Under the Act two causes of action are given: one for an injury resulting from the direct affirmative act of an intoxicated person, and the other for an injury resulting "in consequence of the intoxication, habitual or otherwise." Whiteside v. O'Connors, 162 Ill. App. 108; Hill v. Alexander, 321 Ill. App. 406. In any case where the injury is caused "by" or "in

452

consequence" of the intoxication there must be shown a chain of causal connection, and in the case of an "in consequence" injury, since the case of Shugart v. Egan, 83 Ill. 56, the rule in Illinois had been that the plaintiff is required to prove the element of proximate or effective cause. Danhof v. Osborne, 11 Ill.2d 77, citing Cook v. Kirgan, 332 Ill. App. 294. In cases of this type the statute creates the right in the plaintiff and imposes a duty upon the defendant. It would be idle to speculate as to whether or not a more consistent result would not have been reached if the courts had held that there must be a causal connection between the selling of the intoxicating liquor and the acts resulting in the loss of support without bringing into the picture the technical and confusing interpretation of the legal meaning of proximate cause. In the instant case both parties agree that the injury complained of was an "in consequence" injury.

By their motion to strike count two of the complaint the defendants admitted the allegations that Samuel St. Clair, husband and father of the parties plaintiff, was sold or given alcoholic liquors by the defendants which caused his intoxication in whole or in part and that while intoxicated he stabbed and killed his son, for which crime he was tried, convicted and incarcerated in prison. By ruling on the motion to strike the court decided as a matter of law that the allegations in the complaint were insufficient to show that the furnishing of the intoxicating liquor by the defendants to Samuel St. Clair was the proximate cause of the injury to the means of support.

If the furnishing of the liquors and the resulting intoxication could be held to be the proximate cause of the stabbing and killing of his son by Samuel St. Clair, the first link in the causal connection is established. "Proximate cause" has been defined in numerous Illinois decisions. The injury must be the

natural and probable result of the act or omission and be of a character such as an ordinarily prudent person ought to have foreseen as likely to occur as a result of his act, although it is not essential that the person charged should have foreseen the precise injury which resulted from his act. Neering v. Illinois Cent. R. Co., 383 Ill. 366. "Foreseeability does not mean that the precise hazard or exact consequences which were encountered should have been foreseen. . . . '[W]hen it is found that a man ought to have foreseen in a general way consequences of a certain kind, it will not avail him to say that he could not foresee the precise course or the full extent of the consequences, being of that kind, which in fact happened' [Pollock, Liability for Consequences, 38 L. Q. Rev. 165, 167 (1922)]." Harper and James; Law of Torts, vol. 2, sec. 20.5(6), p. 1147. In Schwehr v. Badalamenti, 14 Ill.App.2d 128, the court held that while in an action for an injury resulting "in consequence" of intoxication the intoxication must be the proximate cause of the injury, it need not be the sole cause, and the court says: "In most cases the death or injury is directly caused by some other agency, but intoxication is held the proximate cause, because the person could not cope with conditions as he could have if sober. . . . [Citing cases.] These and many other cases show: it is only where the cause of injury or death would have occurred regardless of intoxication that it can be held as a matter of law the intoxication is not the proximate cause."

In Shugart v. Egan, supra, the court says:

"It is a natural and probable consequence of letting a drunkard have liquor, that he shall become intoxicated, and, by reason thereof, suffer mental or physical impairment, waste his means, and do violent, absurd and silly acts, for experience proves that

454

these results, in general, in greater or less degree follow."

The furnishing of the intoxicating liquor and the resulting intoxication of Samuel St. Clair could be found by a trier of the facts to be the proximate cause of St. Clair's killing his son while in an intoxicated condition.

The next question which arises: Was the incarceration of St. Clair in the penitentiary the natural and probable result of his killing his son? If it was, the second link in the chain of causation is established, and the allegation that the furnishing of intoxicating liquor was the proximate cause of the loss of support would as a matter of law be sufficient. The defendants contend that the chain of causal connection was here broken since St. Clair's incarceration in the penitentiary was the result of an independent intervening cause, namely, the State of Illinois.

 Any intervening cause is not sufficient to break the causal connection between the wrong and the injury. It must be a new and independent force, the intervention of which was not probable or foreseeable by the first wrongdoer. Casey v. Burns, 7 Ill. App.2d 316, 326. In that case the court further says:

"Where the party responsible for the initial act knows or should know that, if an occasion is given, a particular so-called intervening cause will be likely to exert itself, the furnishing of such an occasion may be in itself an act causing such party to be liable for the result flowing as the effect of such intervening cause, where the intervening cause is within the control of the party responsible for the initial act: Phillabaum v. Lake Erie & W. R. Co., supra. The intervention of independent, concurrent, or intervening forces will not break causal connection if the intervention of such forces was itself probable or foresee-

455

able: Neering v. Illinois Cent. R. Co., supra; O'Brien v. Musfeldt (1951), 345 Ill. App. 12."

When St. Clair killed his son he committed a crime punishable under the laws of the State. His arrest, conviction and sentence followed as the night follows day. It was a result to be anticipated as the natural and probable consequence of his act, and as was said in Homire v. Halfman, 156 Ind. 470, 60 N. E. 154: "The conviction of Beers was not the cause of his imprisonment, but was the result of the crime which he perpetrated in killing Banfield, and that act was the direct and only cause in the eye of the law for the incarceration."

██ ██ It could not be held as a matter of law that the acts of the defendants in selling or giving Samuel St. Clair intoxicating liquor causing him to become intoxicated were not, nor could not be, the proximate cause of his killing his son, the resulting incarceration in the penitentiary and the consequent loss of means of support to the plaintiffs. The question of proximate cause ordinarily is a question of fact for the jury to decide. In Casey v. Burns, supra, the court says that proximate cause "can arise as a question of law only when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from the facts: Phillabaum v. Lake Erie & W. R. Co. (1924), 315 Ill. 131." Reasonable men could differ on the question as to whether under the facts of a particular case such as this the providing of the intoxicating liquor was or was not a proximate and efficient cause of the plaintiffs' loss of means of support.

The defendants rely on the case of Shugart v. Egan, supra, where it was held that where an intoxicated person had been assaulted and killed by a third party the seller of the intoxicating liquors was not liable in damages for the loss of means of support as a result

of the death. There the death was caused by the direct, wilful and criminal act of a third party, and the case does not support the defendants' contention here. In Haw v. 1933 Grill, Inc., 297 Ill. App. 37, where the intoxicated person was injured by one of the managers of the tavern in attempting to eject him when he became disorderly as a result of his intoxication, the court held that the intoxication was a contributing factor and at least a proximate cause of the injury. In Klopp v. Benevolent Protective Order of Elks, 309 Ill. App. 145 (petition for leave to appeal denied, 311 Ill. App. xiv), where the plaintiff, who was not intoxicated, was injured in a brawl caused by an intoxicated person insulting another person who struck him, the court treats the case as an "in consequence" case and holds that proximate cause under the evidence in the case is a fact to be determined not alone from isolated circumstances but from a fair and impartial consideration of all the evidence. The case of Economy Auto Ins. Co. v. Brown, 334 Ill. App. 579, cited by the defendants, was a case in which an action was brought by an insurance company to recover money paid by it in settlement of liability claims against its insured who had injured various persons while driving his car in an intoxicated condition caused by liquor sold to him by the defendants. The court there held that the insurance company had paid out money in consequence of its contract of liability insurance which was entirely independent of and in no way connected with the intoxication of the insured. That case has no application here.

The judgment of the Superior Court of Cook County is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

DEMPSEY and SCHWARTZ, JJ., concur.